JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT MYERS,<br>Plaintiff,<br>v.<br>FIATTE KANG,<br>Defendant. | Case No. 2:22-cv-00737-FLA (AYPx)<br><br>**MEMORANDUM OF DECISION FOLLOWING BENCH TRIAL** |

## RULING

Plaintiff Scott Myers ("Plaintiff"), proceeding pro se, brings this action against Defendant Fiatte Kang ("Defendant"), also proceeding pro se, for trademark infringement pursuant to the Lanham Act, 15 U.S.C. § 1051, et seq. Dkt. 1 ("Compl.") at 2–3.[1] The court held a bench trial on December 9 and 10, 2025. Dkts. 142 ("Tr."), 145 (Tr. 2). On January 9, 2026, Defendant and Plaintiff filed proposed findings of fact and conclusions of law. Dkts. 150 (Def.'s Mem.), 151 (Pl.'s Mem.). After considering and weighing the evidence presented, and evaluating the witnesses' credibility at trial, the court FINDS Defendant is not liable on Plaintiff's sole claim.

The court sets forth below its findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a).[2] To the extent any findings of fact are inadvertently labeled as conclusions of law (or vice versa), they shall be considered "in [their] true light, regardless of the label that the … court may have placed on [them]." *Tri-Tron Int'l v. Velto*, 525 F.2d 435, 435 (9th Cir. 1975) (citations omitted).

## BACKGROUND

Plaintiff's Complaint states he, through his company, sells a product called "Chipsticks," which is described as an "easy to use, one-piece, chopstick-like utensil designed for eating sticky and greasy foods." Compl. ¶ 1. The "Chipsticks" trademark is registered with the United States Patent and Trademark Office

---

[1] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers included natively.

[2] "In bench trials, Fed. R. Civ. P. 52(a) requires a court to find the facts specially and state separately its conclusions of law thereon." *Vance v. Am. Haw. Cruises, Inc.*, 789 F.2d 790, 792 (9th Cir. 1986) (quotation marks omitted). One purpose behind this rule "is to aid the appellate court's understanding of the basis of the trial court's decision." *Id.* (citation omitted). "This purpose is achieved if the district court's findings are sufficient to indicate the factual basis for its ultimate conclusions." *Id.* (citations omitted).

("USPTO") under registration number 6,549,157. *Id.* ¶ 6. The product is sold on the company's website and through Amazon.com. *Id.* ¶ 7.

Plaintiff alleges Defendant sells a similar product, called "Chip-Stick," described as a "[s]oft touch silicone tong, perfect for chips." *Id.* ¶ 2. Plaintiff further alleges Defendant's product is in direct competition with his registered mark and leads to a likelihood of confusion "by selling not only a near identical product, but using a name that causes … confusion" by leading customers to "believe that they are purchasing products made and sold by [Plaintiff] when in fact, they are not." *Id.* ¶¶ 6, 12. The Complaint alleges a single cause of action for trademark infringement under the Lanham Act, 15 U.S.C. § 1051, et seq., and seeks declaratory and injunctive relief, monetary damages, and costs. *Id.* ¶¶ 16–19.

## FINDINGS OF FACT

Plaintiff owns United States Trademark Registration No. 6,549,157 for the stylized "Chipsticks" design mark, and markets and sells a utensil under the name "Chipsticks." *See* Dkt. 138, (Final Pretrial Conference Order) at 3. Defendant is an individual who markets and sells a utensil under the name "Chip-Stick." *Id.* Both products are utensils designed to aid consumers in eating snacks. *Id.* at 4.

Plaintiff came up with the idea for Chipsticks when he was in high school. Tr. at 9:6–11:25. While in college, he developed a prototype and business plan using the Chipsticks mark around February 2020. Tr. Ex. 32; Tr. at 9:6–15:19. Plaintiff then registered Chipsticks LLC on October 7, 2020, with the California Secretary of State. Dkt. 138 at 3. On November 9, 2020, Plaintiff filed an intent-to-use ("ITU") trademark application with the USPTO for the Chipsticks design mark, Serial No. 90-308,500. *Id.*; Tr. Ex. 25.

Plaintiff began selling his Chipsticks product online through multiple platforms, including on his own business website at https://chipsticks.llc/, Amazon.com, and Facebook. Tr. at 20:8–21:24. The product has been continuously available for sale nationally since February 1, 2021. *Id.* at 49:9–23. On the various platforms,

including Amazon, Plaintiff's product listing has a mark mention and image. *See*, *e.g.*, Dkt. 138 at 4. The display of the mark on Plaintiff's product consists of a printed adhesive sticker affixed to the item. *Id.*

The first use in commerce date of Plaintiff's design mark is February 1, 2021. Dkt. 138 at 3. Subsequently, Plaintiff filed a Statement of Use with the USPTO on August 26, 2021. *Id.* at 4. Plaintiff's trademark registration (Reg. No. 6,549,157) was issued on November 2, 2021. *Id.*; Tr. Ex. 25. The "Chipsticks" design mark as depicted on the Principal Register is pictured below:

Tr. Ex. 25. "The mark consists of the word 'CHIPSTICKS' with the 'C''s in the shape of potato chips. Behind the wording is a stylized depiction of black chopsticks that are joined on one side. The 'C''s that are shaped like potato chips are a yellow color with a black outline. The other letters are red with small black outlines in a bubbly type font." *Id.*

Defendant independently conceived of and developed her own kitchen utensil product, and settled on the "CHIP-STICK" mark for her product in January 2020. Tr. at 70:5–20. In February and April 2020, Defendant conducted searches for the term "Chipstick" across online search engines and social media platforms, including the USPTO's website, Google, Instagram, and TikTok, and found no matching or conflicting results. *Id.* at 58:20–25. By May 11, 2020, she sent a drawing of her product to a third-party contractor to obtain drawings and files for use by her future supplier. *Id.* at 59:10–20. Defendant proceeded to vet overseas suppliers to make her Chip-Stick product and conducted another USPTO search on June 1, 2020. *Id.* at 59:19–23; 61:7–10. On June 1, 2020, Defendant created an Amazon account solely to list her Chip-Stick product on Amazon. Tr. Ex. 1; Tr. at 60:5–16.

On June 7 and June 11, 2020, Defendant transmitted drawings to her overseas supplier with specifications of the product, color details, hand-drawn Pantone colors, and her purchase order. Tr. at 61:7–13. Defendant testified that her supplier was a commercial manufacturer in China. *Id.* at 66:12–17. The product she wanted the supplier to produce contained the Chip-Stick mark. *Id.* at 67:14–68:7. Defendant created the final Chip-Stick design mark in June 2020. *Id*. at 68:12–22.

On July 28, 2020, Defendant sent her Chinese manufacturer a prototype of her product with technical details and the CHIP-STICK mark above it. Tr. Ex. 7 at 2; Tr. at 74:18–75:12. On August 26, 2020, the supplier sent Defendant a photograph of her product bearing the logo that read CHIP-STICK asking for Defendant's approval of the logo. Tr. Ex. 7 at 2; Tr. at 75:13–16. On September 22, 2020, the supplier sent Defendant a video of the product, manufactured to Defendant's specifications, right before the mass production products were shipped from China to Defendant. Tr. Ex. 7 at 2; Tr. at 72:15–73:17.

Defendant received the products from China right before she sold her first item, in person at a public WeWork location in Los Angeles, CA, on October 15, 2020. Tr. at 74:23–75:2, 77:12–79:4. Defendant placed a sticker that read "Chip-Stick" on the PVC packaging of her product, and the tong inside itself also bore the same mark. *Id.* at 77:1–11. Defendant testified credibly about and submitted a receipt that was created contemporaneously with her first sale. Tr. Ex. 8; Tr. at 79:5–80:16.

On the same day, Defendant activated an Amazon.com product listing with the CHIP-STICK mark, making her product available for sale to the public nationally, with hundreds of products in inventory. Tr. Ex. 12; Tr. at 80:20–84:18. The first documented sale from Defendant's Amazon.com account occurred on March 17, 2021. Dkt. 138 at 3. Defendant subsequently offered the product for sale and made sales continuously under the CHIP-STICK mark, and maintained records of these sales. Tr. at 80:5–14.

Both parties used some form of social media for advertising. Dkt. 138 at 4.

Since October 2020, Defendant used social media to advertise and market her product to consumers, including through her personal Instagram account, a business Instagram account, and a TikTok account. Tr. at 96:6–103:8. Defendant created her public business Instagram account, @ _chipstick_, on October 24, 2020, and publicly displayed her mark, logo, and product imagery in both the account name and profile picture. *Id.* at 96:15–97:2; Tr. Exs. 9; 10. Her social media accounts contained photographic and textual use of her Chip-Stick mark and logo. Tr. at 97:22–99:9. Her TikTok account included over 50 videos she posted and had approximately 435 followers, while Plaintiff's TikTok account had approximately 25 followers. Tr. 103:5–8. Defendant also engaged in consistent marketing efforts, including regular social media postings and collaborations with influencers, to promote the brand and product. *See*, *e.g.*, Tr. at 50:5–22.

Defendant never filed a trademark application for her "Chip-Stick" mark with the USPTO. Dkt. 138 at 4. On July 12, 2022, Defendant filed a Petition for Cancellation of Plaintiff's trademark registration before the USPTO, Trademark Trial and Appeal Board, which is currently suspended pending the outcome of this litigation. *Id.* Defendant also filed a Notice of Opposition pursuant to 15 U.S.C. § 1063 against Plaintiff's application for the standard-character word mark, Serial No. 90870951, on August 7, 2022, which is currently suspended pending the outcome of this litigation. *Id.*

On December 22, 2021, Plaintiff sent a cease-and-desist letter to Defendant. Dkt. 138 at 4. Defendant subsequently ceased all use of the mark on her social media and Amazon pages pending the outcome of this litigation, "[b]ecause of the cease and desist" demand. Tr. at 84:19–25. Plaintiff proceeded to file this action on January 31, 2022, and served Defendant on April 29, 2022. *Id.*

Based on the evidence presented at trial, the court finds by a preponderance of the evidence that Defendant first sold her product in commerce under the CHIP-STICK mark on October 15, 2020, which was before Plaintiff's ITU filing date of

November 9, 2020, and that Defendant used the mark continuously until Defendant sent her a cease-and-desist letter in anticipation of the subject litigation.

## CONCLUSIONS OF LAW

At trial, Plaintiff pursued his single claim that Defendant infringed on Plaintiff's registered design mark (U.S. Serial No. 90/308500, U.S. Reg. No. 6,549,157), by selling not only a near identical product but using a name that causes a likelihood of confusion to make customers believe they are purchasing a product made and sold by Plaintiff when, in fact, they are not, pursuant to the Lanham Act, 15 U.S.C. § 1051, et seq. For the reasons described below, Plaintiff's claim fails.

### I. Trademark Infringement

On a claim for trademark infringement, a plaintiff has the burden of proving each of the following elements by a preponderance of the evidence: (1) the existence of a valid, protectable trademark; (2) that plaintiff owns the trademark; and (3) the defendant used the mark without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods. Ninth Circuit Manual of Model Civil Jury Instructions No. 15.6 (2025); *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002) ("Overall, the plaintiff retains the ultimate burden of persuasion in a trademark infringement action, namely proof of infringement. A necessary concomitant to proving infringement is, of course, having a valid trademark; there can be no infringement of an invalid mark.").

#### A. Validity and Protectability

One way for a plaintiff to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the USPTO and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate. "Registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the

registrant's exclusive right to use the mark in connection with the goods specified in the registration." *Pom Wonderful LLC v. Hubbard, Jr.*, 775 F.3d 1118, 1124 (9th Cir. 2014). However, "registration only provides a presumption of validity, shifting the burden to the defendant to rebut it…." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs.*, 897 F.3d 1008, 1024–25 (9th Cir. 2018).

Plaintiff's federal trademark registration certificate, Tr. Ex. 25, is prima facie evidence of the mark's validity and Plaintiff's exclusive right to use the mark nationwide. *See* 15 U.S.C. §§ 1057(b), 1115(a); *Sengoku Works, Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). Plaintiff has established that his mark is properly registered.[3]

**B. Ownership**

"It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark[,] it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works*, 96 F.3d at 1219; *see also Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 756 (9th Cir. 2006) ("Trademark rights are acquired by the party that first uses a mark in connection with the sale of goods."). The Lanham Act makes clear that the "term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127; *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1051 (9th Cir. 1999).

"When proving ownership of a trademark, federal registration of the mark is prima facie evidence that the registrant is the owner of the mark." *Sengoku Works*

---

[3] "To be valid and protectable, a mark must be 'distinctive.'" *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010). Defendant does not challenge the distinctiveness of Plaintiff's registered design mark or argue the mark is invalid on this basis. *See* Dkt. 138. Given the mark was registered, the court finds the mark is protectable. *See Zobmondo*, 602 F.3d at 1113–14.

*Ltd.*, 96 F.3d at 1219 (citing 15 U.S.C. §§ 1057(b), 1115(a)). "Therefore, the registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration, and the challenger must overcome this presumption by a preponderance of the evidence." *Id.* "[T]he non-registrant can rebut this presumption by showing that the registrant had not established valid ownership rights in the mark at the time of registration—in other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated." *Id.*

To determine whether there has been prior "use in commerce," courts in the Ninth Circuit assess the totality of circumstances. *Chance v. Pac–Tel Teletrac, Inc.*, 242 F.3d 1151, 1157 (9th Cir. 2001). The proponent of the mark must prove (1) it actually adopted and used the mark in commerce prior to its opponent in such a manner that sufficiently associated the mark with the proponent, and (2) that the use of the mark was continuous and not interrupted. *Id.* at 1157–58; *see also Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014) ("To establish a protectible ownership interest in a common law trademark, the owner must establish not only that he or she used the mark before the mark was registered, but also that such use has continued to the present.") (internal quotation marks and citation omitted). "While the first use need not be extensive, the use must be bona fide and commercial in character[.]" *Dep't of Parks & Rec. for State of Cal. v. Bazaar del Mundo, Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006).

Plaintiff's trademark registration reflects a constructive first use date of November 9, 2020, and a first use in commerce date of February 1, 2021. Tr. Ex. 25. The relevant date for assessing priority of use is the earlier date of November 9, 2020. *See Zobmondo*, 602 F.3d at 1111 n. 3 (noting that once an ITU applicant files a statement of use pursuant to the Lanham Act, "the mark is registered and the date the ITU application was filed becomes the applicant's constructive-use date," giving "the applicant priority-of-use over anyone who adopts the mark after the constructive-use

date"); 15 U.S.C. § 1057(c).

Defendant testified credibly and presented documentary evidence, including a receipt of her first sale, that she first used the CHIP-STICK mark in commerce on October 15, 2020, in connection with her utensil product. *E.g.*, Tr. at 77:12–79:4. Accordingly, Defendant has established bona fide use of the CHIP-STICK mark in commerce prior to Plaintiff's November 9, 2020 ITU filing, by a preponderance of the evidence. *See In re Silenus Wines, Inc.*, 557 F.2d 806, 807–12 (C.C.P.A. 1977) (holding intrastate sale of goods by a party that caused those goods to move in interstate or foreign commerce directly affects interstate or foreign commerce and is itself "use in commerce"). Defendant's evidence of subsequent Amazon sales and continued marketing efforts establish by a preponderance of the evidence that she offered the CHIP-STICK product for sale and used the mark in commerce continuously after that date.[4] *E.g.*, Tr. at 80:2–14; 86:8–21.

The court, therefore, finds by a preponderance of the evidence that Defendant used the CHIP-STICK mark in commerce prior to Plaintiff's constructive first use date of November 9, 2020, and that Defendant's use of the mark was continuous and

---

[4] While Defendant halted sales following receipt of Plaintiff's cease-and-desist letter, abandonment requires a showing of intent not to resume use. *See* 15 U.S.C. § 1127. Defendant testified credibly that she only paused sales in response to the cease-and-desist letter. Tr. at 84:19–25. Temporary non-use of a trademark explicitly caused by a party's response to a cease-and-desist letter is legally excusable and does not constitute a break in continuous use or an abandonment of priority rights. *See Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 933 (9th Cir. 2006); *see also Burgess v. Gilman*, 475 F. Supp. 2d 1051, 1061 (D. Nev. 2007), *aff'd*, 316 F. App'x 542 (9th Cir. 2008) ("In general, temporary suspension of use for reasons beyond the control of the mark owner is excused and does not lead to abandonment."); 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 17:16 (5th ed.) (citing myriad cases and summarizing the rule as follows: "[a]bandonment does not result from a temporary forced withdrawal from the market due to causes such as … being sued for patent infringement, or some other involuntary action"). Defendant's suspension of use was a reasonable protective business measure, not an intention to abandon her brand or mark.

uninterrupted.

Because Plaintiff has not established priority of use of the CHIPSTICKS design mark, he cannot prevail on his trademark infringement claim against Defendant. Put simply, Defendant did not infringe Plaintiff's trademark rights.[5]

**CONCLUSION**

For the foregoing reasons, the court FINDS Defendant not liable on Plaintiff's claim for trademark infringement, and ORDERS that judgment be entered in Defendant's favor consistent with this Memorandum of Decision.

IT IS SO ORDERED.

Dated: September 29, 2026

FERNANDO L. AENLLE-ROCHA
United States District Judge

[5] Because Plaintiff has failed to establish the threshold element of ownership and priority, he cannot meet the elements for a prima facie case of trademark infringement, and his claim fails as a matter of law. Accordingly, the court need not reach the secondary inquiry of likelihood of confusion, nor must it analyze Defendant's asserted affirmative defenses.